WR-56,666-03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/28/2015 1:09:19 PM
Accepted 12/29/2015 4:29:58 PM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS
### AUSTIN, TEXAS

|  |  |  |
|---|---|---|
| **EX PARTE** | § | |
| | § | |
| | § | **NO. WR-56,666-03** |
| | § | |
| **DENNIS LEE ALLEN** | § | |

## COPY OF SECOND AMENDED
## APPLICATION FOR WRIT OF HABEAS CORPUS

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** the Applicant, DENNIS LEE ALLEN, and submits this Copy of

Second Amended Application for Writ of Habeas Corpus.

Respectfully submitted,


    /s/ Gary A. Udashen
GARY A. UDASHEN
Bar Card No. 20369590

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas  75201
214-468-8100
214-468-8104 fax
Appearing on Behalf of the
Innocence Project of Texas

*Counsel for Dennis Lee Allen*

RECEIVED IN
COURT OF CRIMINAL APPEALS

December 29, 2015

ABEL ACOSTA, CLERK

1

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a true and correct copy of the foregoing Copy of Second Amended Application for Writ of Habeas Corpus was delivered to Cynthia Garza and Patricia Cummings, Assistant Dallas County District Attorneys, on this the 28th day of December, 2015.

/s/ Gary A. Udashen
GARY A. UDASHEN

2



FILED

IS DEC 22 PM 2: 25

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS COUNTY TEXAS
_____DEPUTY

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## SECOND AMENDED APPLICATION FOR A WRIT OF HABEAS CORPUS SEEKING RELIEF FROM FINAL FELONY CONVICTION UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: Dennis Lee Allen

DATE OF BIRTH: July 7, 1962

PLACE OF CONFINEMENT: On Bond

TDCJ-CID NUMBER: 01001859          SID NUMBER: 05465683

(1)     This application concerns (check all that apply):

|   |   |   |   |
|---|---|---|---|
| X | a conviction | ☐ | parole |
| X | a sentence | ☐ | mandatory supervision |
| ☐ | time credit | ☐ | out-of-time appeal or petition for discretionary review |

(2)     **What district court entered the judgment of the conviction you want relief from?** (Include the court number and county.)

265th Judicial District Court/Dallas County

(3)     **What was the case number in the trial court?**

F00-01305-FR

(4)     **What was the name of the trial judge?**

Keith Dean

Effective: January 1, 2014                    1

(5) Were you represented by counsel?  If yes, provide the attorney's name:

Yes, Jim Oatman

(6) What was the date that the judgment was entered?

September 1, 2000

(7) For what offense were you convicted and what was the sentence?

Capital Murder/Life

(8) If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

(9) What was the plea you entered? (Check one.)

☐ guilty-open plea          ☐ guilty-plea bargain
X  not guilty               ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

(10) What kind of trial did you have?

☐ no jury                   X  jury for guilt and punishment
                            ☐ jury for guilt, judge for punishment

2

(11)   Did you testify at trial? If yes, at what phase of the trial did you testify?

Yes, Guilt-Innocence

(12)   Did you appeal from the judgment of conviction?

X yes                              ☐ no

If you did appeal, answer the following questions:

(A)   What court of appeals did you appeal to?    8th District/El Paso

(B)   What was the case number?    08-00-00442-CR

(C)   Were you represented by counsel on appeal? If yes, provide the attorney's name:

Yes

(D)   What was the decision and the date of the decision?    Affirmed - 07/11/2002

(13)   Did you file a petition for discretionary review in the Court of Criminal Appeals?

X yes                              ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A)   What was the case number?         1390-02

(B)   What was the decision and the date of the decision?    Refused - 01/29/2003

(14)   Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

X yes                              ☐ no

If you answered yes, answer the following questions:

(A)   What was the Court of Criminal Appeals' writ number? 56,666-02

3

(B) What was the decision and the date of the decision?   Denied - 11/12/2013

(C) Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

The current claims are based on newly available and newly discovered evidence

that could not have been presented at the time of the filing of the first application.

The factual and legal basis of these claims was not available. Moreover, by a preponderance of the evidence, but for a violation of the U. S. Constitution, no rational juror could have found the Applicant guilty beyond a reasonable doubt. Art. 11.07, Sec. 4.

(15) Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes                              X no

If you answered yes, please provide the name of the court and the case number:

_____

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes                              ☐ no

If you answered yes, answer the following questions:

(A) What date did you present the claim?  _____

(B) Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4

(17)   Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

There is newly discovered and available evidence of actual innocence. No rational jury would have found proof of guilt had the new DNA and other evidence been available.

**FACTS SUPPORTING GROUND ONE:**

This new evidence is DNA tests excluding both Allen and co- defendant Mozee. An unknown person was the source of 1) DNA mixed with the victim's in a distinct drop of blood swabbed from the front of the store. 2) DNA on the handle of a hammer found next to the victim's corpse, which contained the victim's own blood on the ball end. 3) A hair underneath the victim's fingernails. Additional evidence includes correspondence from two jailhouse informants, Hardeman and Smith, which contradicted their trial testimony revealing that they had sought and believed they had been promised deals for their testimony. There is also evidence that witnesses Hardeman and Robinson fabricated their testimony. Other new evidence is that Det. Berry in an affidavit made false representations regarding the eyewitnesses he had interviewed. Additional new evidence is that one of the three store clerks who Det. Berry claimed had identified Allen had actually told another officer she did not get a good look at the suspect and could not identify anyone. Moreover, there is newly discovered evidence that none of the three store clerks (Kwoon, Jang and Tinsaye) who allegedly identified Allen as passing the deceased's

6

credit cards actually stands by their identification and each of them have withdrawn or recanted their identification or expressed doubts about it. Kwoon actually picked out a picture of someone other than Allen as passing the credit card. There is newly discovered evidence of eyewitnesses statements describing suspects seen before and after the murder who did not fit the physical features of Mozee and Allen. Also, there is new evidence of at least one additional undisclosed eyewitness interviewed by Det. Berry who gave a detailed description of two men he saw arguing with the victim shortly before his death. Other new evidence is the fact that nowhere in the state's files is there any reference to photo arrays containing either defendant being shown to two eyewitnesses - Scott James and Insun Chon - which indicates that photo arrays were shown to these witnesses but they did not pick out Mozee or Allen. There is also new evidence that Smith's motive to claim that Mozee confessed to involvement in this murder is that Mozee stole Smith's commissary in jail. This new evidence establishes that Applicant is actually innocent under the *Elizondo* and *Schlup* standard.

**GROUND TWO:**

Applicant is entitled to relief because, by a preponderance, he would not have been convicted

had the new DNA evidence been available at trial.

**FACTS SUPPORTING GROUND TWO:**

Under Art. 11.073, Tex. Code Crim. Proc., the new DNA evidence in this case provides a ground

for relief. This new DNA evidence was not available to be offered by Applicant at his trial since

it was not in existence. This new DNA evidence identifies DNA from persons other than Allen

or Mozee, in locations where DNA from the persons who committed this murder would be

found. Had this new scientific DNA evidence been available and been presented at trial, on the

preponderance of the evidence, Applicant would not have been convicted.

8

**GROUND THREE:**

The state failed to disclose exculpatory evidence in violation of Applicant's due process rights.

**FACTS SUPPORTING GROUND THREE:**

The state failed to disclose exculpatory evidence in violation of due process as follows:

1) Pretrial correspondence from informants Hardeman and Smith found in the District

Attorney's file containing the following suppressed exculpatory evidence

a.     Correspondence from Lonel Hardeman to the prosecutor regarding his belief that he had

a deal for his testimony with the prosecutor. This directly contradicts Hardeman's testimony,

directly elicited by the prosecutor, that he had no deal, understanding, arrangement or

expectation of leniency, did not want a deal and never even discussed a deal.

b.     Correspondence from Zane Smith to the prosecutor regarding his discussions with the

prosecutor regarding assistance from the prosecutor with Smith's own legal issues. This also

contradicted direct testimony from Smith, elicited by the prosecutor, that there was no deal,

understanding, arrangement or expectation of leniency.

10

Because the state relied so heavily on informant testimony to prove its case, the violations here were unquestionably material to the outcome. Moreover, the lead prosecutor (1) was under direct orders from the trial court to make timely disclosure of precisely such *Brady* material, and (2) repeatedly and deliberately elicited testimony from both informants at trial disclaiming any expectation of personal benefit to themselves, even though he knew - as reflected by the letters in his own file - that this testimony was false.

2. The state also failed to reveal deals, agreements or understandings with the following witnesses that the state either would or already had assisted them with their own criminal problems: (a) John Paul Robinson, (b) Cynthia Sloan, (c) Kenneth Jones, (d) Charles Manning, (e) Alvin Degrafton-Reid, (f) Zane Smith. In fact on Manning and Degrafton-Reid, the police detective helped them with their probation violations.

3. The state also failed to reveal that the prosecutor interviewed the following two witnesses who allegedly identified Allen as passing the deceased's credit cards and they expressed doubt about their identification: witnesses Kwoon and Jang.

4. The state did not reveal that Charles Manning had acted as a police informant on other cases and that he suffered from mental problems at the time he provided his statements to law enforcement.

11

**GROUND FOUR:**

State's witnesses testified falsely at trial and the prosecutor failed to correct their testimony or inform the court of its falsity.

**FACTS SUPPORTING GROUND FOUR:**

State's witness Lonel Hardeman claimed at trial that he had no deal, understanding or agreement with the state, that he would receive help with his own criminal cases after his testimony. He also claimed that he had no discussion about help with his cases, had no hope of leniency from the state, and did not want any help and would not accept it if offered. All of these statements were false and the prosecutor knew they were false. Yet, the prosecutor did nothing to correct this false testimony or inform the court of its falsity. This is a violation of the prosecutor's duty to correct false testimony and is a violation of Applicant's right to due process.

State's witness Zane Smith also falsely implied to the jury that he had received no help from the state on his case and expected none. Likewise, state's witnesses Robinson, Sloan, Manning and Degrafton-Reid all testified that they had no understanding with the state for assistance on their cases, and the state had not and would not assist them. This was also false testimony the state failed to correct violating Applicant's due process rights.

## GROUND FIVE:

The State secured Applicant's conviction through the presentation of false testimony from its

lead detective in violation of Applicant's due process rights.

## FACTS SUPPORTING GROUND FIVE :

The state secured these convictions through the knowingly false sworn statements of Det. Berry.

Berry had submitted an affidavit prior to trial in support of applicant's arrest where he stated that

he had located three employees at businesses where suspects had attempted to use the victim's

stolen credit cards within hours of the murder. Berry further attested that the three employees

had identified Allen from the photo array. Berry also testified to this. Newly discovered police

reports and notes from the District Attorney's trial file show that these statements were false.

Moreover, Det. Berry had located and interviewed five, not three employees from these

businesses. In fact, not all of them selected Allen's photograph; one clerk did not, identifying a

different suspect.Also, as to the most relevant witness, Insun Chon, who dealt directly with the

suspect and refused to complete the transaction, Det. Berry's reports make no mention of any

array or lineup ever being shown him. This is likely because the identification procedure

engaged in with this witness did not result in any inculpatory evidence.

Det. Berry's credibility was critical to the state's case: he was the only witness to the allegedly

14

voluntary "confession" of guilt made by Mr. Mozee in custody, and he interviewed virtually all of the state's key informants and eyewitnesses. The new evidence that he knowingly misrepresented the nature of the eyewitness evidence to the court and jury in sworn statements undermines confidence in the trial's outcome and requires due process relief.

15

## GROUND SIX:

The state failed to disclose favorable eyewitness evidence in violation of Applicant's due process rights.

## FACTS SUPPORTING GROUND SIX:

The state's trial prosecutor also failed to disclose exculpatory evidence regarding eyewitnesses, in violation of due process and the district court's express pretrial orders.

In particular, the state failed to disclose the fact that Ms. Kyoung Jang, one of the three store clerks who purportedly identified Allen to Det. Berry, had earlier stated to another detective that she "could not recognized [sic] anyone in relation to the attempt [sic] use of the complainant's credit card, as she had not gotten a close look at the individual trying to use it."

This report was addressed to Det. Berry, was dated more than a year before trial, and was part of the prosecution's trial file, but was never disclosed to either defense counsel. In addition, the District Attorney's trial file contains a report regarding another key eyewitnesses who also did not identify Allen or Mozee: Insun Chon, a store manager who refused to complete the transaction with the man who tried to use the victim's stolen card Yet, there are no reports reflecting that eyewitness identification procedures (arrays/lineups) were shown to this witness - despite the fact that Det. Berry showed the defendants'photographs to every other witness

16

who viewed the suspects, including those with far more limited opportunities to view the suspects than Mr. Chon This strongly indicates that this witness, consistent with the rest of the investigation, was in fact show the defendants' photographs and did not identify them, but the state failed to memorialize or disclose that fact to the defense. In fact, a recently disclosed notation in the district attorney's file indicates that Mr. Chon did not identify either defendant prior to trial and the prosecutor was aware of that fact.

## GROUND SEVEN:

The testimony from the informants was false and presented in violation of due process.

## FACTS SUPPORTING GROUND SEVEN:

State's witnesses Hardeman and Robinson now admit that the testimony they presented at trial was false and that Allen did not say the things he claimed at trial he said. Moreover, it is clear from the records that they falsely testified concerning whether they expected to receive any benefits from the state. Also, the following witnesses presented false testimony concerning whether they had received or expected to receive any help from the state with their cases. Zane Smith, Cynthia Sloan, Kenneth Jones, Charles Manning, Alvin Degraften-Reed. Even if the prosecutor did not know of the falsity of the substance of this testimony, the presentation of this false testimony is a violation of due process. The Court of Criminal Appeals has previously held that due process requires relief whether new evidence reveals that a key witness's trial testimony against a defendant was false, whether or not trial prosecutors knew or should have known of its falsity. Thus, the informant's recantation, if credited, would provide further grounds for granting the writ (in addition to the considerable documentary evidence establishing due process violations regarding these informants as set forth separately in other grounds, *supra*).

18

**GROUND EIGHT:**
Applicant received ineffective assistance of counsel at trial.

**FACTS SUPPORTING GROUND EIGHT:**

In an evidentiary hearing on this writ application, the state's prosecutor at trial, Rick Jackson,

claimed that an entry in his notes stating that he showed physical evidence to defense counsel

Jim Oatman, means that he showed defense counsel the letters from Hardeman and Smith

concerning their discussions with the state about help the state would give them on their cases.

Prosecutor Jackson does not claim to remember actually giving or showing defense counsel

these letters. Rather, he relies on this notation of showing defense counsel the physical

evidence as his basis for his claim that he showed the letters to defense counsel. Nevertheless,

the evidence clearly shows that the prosecutor did not show these letters to defense counsel.

However, if the court finds the prosecutor's testimony in this regard convincing, then there is

clear and obvious ineffective assistance of counsel by defense counsel in failing to use these

letters at trial to impeach the testimony of Hardeman and Smith claiming they had no deal,

agreement, arrangement or understanding that the state would assist them in their own cases.

This ineffective assistance would be inadequate performance by counsel and would have

20

affected the outcome of these cases since Hardeman and Smith were important state

witnesses.

## GROUND NINE:

The police detective and prosecutor engaged in a pattern of misconduct that violates due process

## FACTS SUPPORTING GROUND:

As set out in the previous grounds, there was a pattern of misconduct by the police detective and prosecutor that violated due process. All of those arguments and incorporated herein.

Additionally, it is clear that the police detective engaged in suggestive and improper procedures in order to obtain identification of Allen, witness statements and the alleged confession from Mozee. The detective claimed that three store clerks identified Allen as passing a credit card in photo lineups. However, when one clerk came to testify, he saw Allen and said he was not the person who passed the credit card. Another store clerk told the current District Attorney's Office that he was called to the courthouse and met with the prosecutor before trial. When he met with the prosecutor, he was shown pictures and asked to pick out the person who passed the credit card. He chose someone other than Allen. The prosecutor then did this again and again he chose someone other than Allen. He was the sent home and never called to testify. Defense counsel was not informed of this. The fact that the prosecutor felt the need to show this witness pictures is an indication that the detective felt that there was a problem

22

with the witnesses' identification of Allen. Combined with the witness who saw Allen in court and said this is not the person who passed the credit card, this is an indication that the police detective engaged in suggestive and improper identification procedures in order to obtain an identification of Allen.

These facts call into question the entirety of the police investigation. The evidence of improper actions in order to obtain Allen's identification and other testimony raises a question as to the validity of all of the evidence obtained by the police and District Attorney in this case. The fact that these improper actions were engaged in by State actors calls into question all of the State's evidence.

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _Dallas_

_____Gary A. Udashen_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS __24__ DAY OF __Dec.__, 20_15_.

_____
Signature of Notary Public

PHYLLIS ANN SPURGEON
Notary Public, State of Texas
My Commission Expires
April 27, 2016

24

## PETITIONER'S INFORMATION

Petitioner's printed name: <u>Gary A. Udashen</u>

State bar number, if applicable: <u>20369590</u>

Address: <u>2311 Cedar Springs Road</u>

<u>Suite 250</u>

<u>Dallas, Texas 75201</u>

Telephone: <u>214-468-8100</u>

Fax: <u>214-468-8104</u>

## INMATE'S DECLARATION

I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _____, 20_____.

_____

Signature of Applicant / Petitioner (circle one)

25

**PETITIONER'S INFORMATION**

Petitioner's printed name:  Gary A. Udashen

Address:   2311 Cedar Springs Road

Suite 250

Dallas, Texas  75201

Telephone: 214-468-8100

Fax:  214-468-8104

Signed on _____ Dec. 21 _____, 20 15 .

_____
Signature of Petitioner

26